IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CT-3228-FL

| | | |
|---|---|---|
| ORLANDER D. LEGGETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| GEORGE SOLOMON, JACKIE PARKER, CHAPLAIN HOVIS, SERGEANT JOLLY, and SERGEANT FLOYD, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

The matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (DE 20). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motion.

## STATEMENT OF THE CASE

On September 3, 2014, plaintiff, a state inmate, filed this civil rights action, *pro se,* pursuant to 42 U.S.C. § 1983, against the following defendants: George Solomon ("Solomon"), the Director of Adult Facilities for the Department of Public Safety ("DPS"); Jackie Parker ("Parker"), Chief of Food and Nutrition for DPS; Chaplain Marcus Hovis ("Hovis"), a clinical chaplain employed at Tabor Correctional Institution ("Tabor"); Sergeant Jolly ("Jolly"); and Sergeant Floyd ("Floyd"). In his complaint, plaintiff alleged that defendants Solomon, Parker, and Hovis violated his rights pursuant to the Religious Land Use of Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-1, et seq. and the Free Exercise Clause of the First Amendment to the United States

Constitution in connection with a DPS policy which provided Muslim inmates on a regular diet, but not those on a special diet, a supplemental nutritional snack bag during the month of Ramadan in 2014. Plaintiff also sought to hold defendants Solomon, Parker, Hovis, and Jolly liable for beginning Ramadan a day late on June 29, 2014, and to hold defendants Solomon, Parker, Hovis, and Floyd liable for beginning a meal during Ramadan too early on June 16, 2014. Plaintiff sought both injunctive and monetary damages as relief.

On April 15, 2015, the court conducted a frivolity review of plaintiff's complaint. In its order, the court dismissed without prejudice plaintiff's claims that defendants Jolly and Floyd interfered with plaintiff's fasting for Ramadan on June 16, 2014, and June 28, 2014, because plaintiff failed to exhaust his administrative remedies for these claims prior to filing the instant action on September 3, 2014. Because defendants Jolly and Floyd were named as defendants in connection with these claims only, defendants Jolly and Floyd were terminated as defendants in this action. The court, however, allowed plaintiff to proceed with the remainder of his action against defendants Solomon, Parker, and Hovis.

Defendants Solomon, Parker, and Hovis subsequently filed a motion for summary judgment, arguing that plaintiff is unable to establish a constitutional violation. Along with their motion, defendants filed a statement of material facts and an appendix to which they attached the following: an affidavit from defendant Hovis; an affidavit from non-party, Larry Thompson ("Thompson"), the Assistant Superintendent of Operations and Custody at Tabor; a 2014 memorandum from defendant Solomon regarding the observance of Ramadan; a 2013 memorandum from Chaplain Betty A. Brown regarding the inmates on medications and special diets desiring to fast for Ramadan; a 2014 Ramadan snack memorandum and emails; additional emails regarding Ramadan snack bags;

2

administrative remedy filings; plaintiff's January 7, 2014, nutritional assessment; and plaintiff's July 2014, therapeutic diet records. The motion was fully briefed. Plaintiff was released from incarceration on September 11, 2016. See www.doc.state.nc.us.

**STATEMENT OF THE FACTS**

Except as where otherwise identified below, the undisputed facts are as follows. Plaintiff, a practicing Muslim, brought this action challenging a 2014 DPS's policy which permitted inmates participating in the regular diet to receive supplemental nutritional snack bags during Ramadan, but did not provide for any meal supplements to inmates, such as plaintiff, participating in the special diet. During the relevant time period, plaintiff was on a "bland" therapeutic diet for his Gastroesophageal Reflux Disease ("GERD") rendering him ineligible for the supplemental snack bag. (Thompson Aff. ¶ 11 and Ex. E). As part of the January 7, 2014, order prescribing the bland diet, Tabor medical staff recommended that plaintiff comply with his diet, avoid inappropriate snacking from the canteen, increase daily exercise, notify the medical department of any significant changes, avoid eating at least 3-4 hours before bedtime, and stay upright and avoid vigorous activity soon after eating. (Id. Ex. E). The bland diet originally was prescribed for a period of one year. (Id. ¶ 11 and Ex. E). However, plaintiff ultimately refused to continue the bland diet on August 14, 2014. (Id. ¶ 12 and Ex. E).

On May 20, 2014, Solomon issued a memorandum which governed Muslim inmates' observance of Ramadan and permitted such inmates to consume meals either before dawn or after sunset during the fast. (Hovis Aff. ¶ 10 and Attach. 1). The May 20, 2014, memorandum specifically provided that the observance of Ramadan for the year 2014 began on Sunday, June 29, 2014, and ended on Monday, July 28, 2014. (Id. p. 1). The memorandum stated that "[e]very

3

reasonable effort shall be made to assist Islamic Muslim Faith Practitioners in the observance of the Holy Days while still maintaining the safety, security, and operations of the facility." (Id.) The memorandum further provided:

> Every reasonable effort will be made within the facility to make the morning and evening meals available in a timely basis consistent with the facility's operation. Muslim offenders will receive a supplemental bag meal in addition to the Supper meal to ensure adequate calories are provided each day.
>
> **NOTE:** Please reference the July 1, 2013 Divisional Memorandum entitled *Muslim Inmates on Medications and Special Diets Desiring to Fast,* on the prison webpage.
>
> If an Islamic Muslim fast is broken due to illness, arduous work, travel, extreme discomfort and woman's menstrual cycle, Islamic law states the fast shall be resumed if broken.

(Id.)

The above-referenced 2013 Divisional Memorandum provided:

> No person with a chronic illness should be without food. The Qur-an says those who are ill should compensate by doing something charitable (e.g., feeding an indigent person daily, teaching an illiterate person how to read; keeping the disciplines by abstaining from lying, foul language, backbiting and negative talk, etc.).
>
> Those who have to take medicines should do so early before the fast period begins. The fast is invalidated if it is ingested during the daylight hours. But it is advisable for those who have a chronic illness to accept to do what I have outlined above. The purpose of the fast is to grow in obedience to God. The Qur'an says, ". . . . God wants you to have every ease and does not want to put you to difficulty. But he wants you to complete the fast period so that perchance you will be grateful."

(Id. Attach. 2, p. 1).

On June 29, 2014, the first day Ramadan was scheduled to be observed at Tabor, plaintiff submitted an inmate grievance stating that he "was told that [he] was not entitled to the Muslim

4

snack bag" because prison officials "had paper work saying special diets don't get one, which makes no sense considering that we get less food." (Thompson Aff. Ex. A, p. 3). (Id.) Plaintiff further added that he was on a bland diet by choice due to his acid reflux and that his "situation is not medical ordered." (Id.) Prison officials ultimately responded to plaintiff's grievance and stated that an investigation of plaintiff's complaint "revealed that the memo from Raleigh clearly stated that only 'regular diets' were to receive the supplemental bags and this was confirmed with the dietician. Staff indicated that [plaintiff] was prescribed a bland diet by the medical staff; therefore he was not eligible for a supplemental bag meal during Ramadan."[1] (Id.)

On July 14, 2014, Patsy Chavis ("Chavis"), a Tabor Administrator, emailed defendant Hovis stating that plaintiff had asked Chavis about the "Islamic feast." (Hovis Aff. ¶ 16 and Ex. 4). Defendant Hovis responded that he would call plaintiff to his office the following day. (Id.) The next day, July 15, 2014, defendant Hovis met with plaintiff, and plaintiff inquired about the DPS policy regarding snack bags during Ramadan. (Id.) Defendant Hovis told plaintiff that the North Carolina DPS policy allowed snack bags for inmates on a regular diet only, and informed plaintiff that he could not explain the policy any further. (Id.) Plaintiff then told defendant Hovis that plaintiff would follow-up with food service staff. (Id.) Thompson attests that although he did not have direct knowledge of plaintiff's meal habits in July 2014, he can "only assume that food service staff attempted to accommodate [plaintiff] within the parameters of his therapeutic diet during Ramadan 2014 by providing him snacks." (Thompson Aff. ¶ 16). Plaintiff disputes Thompson's

---

[1] In addition to his formal grievance, plaintiff submitted an inmate request form to defendant Hovis asking whether plaintiff would be permitted an evening snack bag during Ramadan. ((DE 5), p. 3). In response, defendant Hovis informed plaintiff that the North Carolina Department of Public Safety policy provided snack bags only for inmates on a regular diet. (Id. p. 4; Hovis Aff. ¶ 15).

5

Case 5:14-ct-03228-FL   Document 34   Filed 01/31/17   Page 5 of 11

representation, and states that he did not receive any snacks during Ramadan in 2014. (Pl.'s Resp. (DE 28), ¶ 2).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Analysis

    1.  RLUIPA and Requests for Injunctive Relief

The court begins by considering whether plaintiff's September 11, 2016, release from incarceration moots his requests for injunctive relief. Federal courts may only decide actual cases or controversies. See U.S. Const. art. III, § 2. A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). "The requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence." United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) (quotation omitted). To satisfy the Article III case

6

or controversy requirement, "[a] litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70–71 (1983). When a case or controversy ceases to exist, the litigation becomes moot and the federal court no longer possesses jurisdiction to proceed. Id.

Here, plaintiff was released from DPS custody and no longer is subjected to its policies, including DPS's snack bag policy at issue in this action. Thus, plaintiff's requests for injunctive relief in this case are MOOT for both his RLUIPA and First Amendment claims. See Incumaa v. Ozmint, 507 F.3d 281, 287 (4th Cir. 2007) (holding that transfer or release moots claim for injunctive relief under RLUIPA.)

On a related note, plaintiff's release from incarceration also moots his RLUIPA claim for monetary damages. In particular, RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc–1(a). RLUIPA provides an avenue for an inmate to remove a substantial burden on his religious exercise through injunctive relief, it does not authorize claims for official or individual capacity monetary damages. Sossamon v. Texas, 563 U.S. 277, 293 (2011) (finding RLUIPA does not authorize a private cause of action for money damages against prison personnel for action taken in their official capacity); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009). Based upon the foregoing, plaintiff may not recover monetary damages under RLUIPA.

2. First Amendment Claim for Monetary Damages

Defendants Solomon, Parker, and Hovis raise the affirmative defense of qualified immunity with respect to plaintiff's First Amendment claim. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory

7

or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Plaintiff asserts that DPS's policy of restricting the provision of nutritional supplemental snack bags during Ramadan to inmates participating in the regular diet without providing any meal supplement to inmates, such as plaintiff, participating in the special diet violated the First Amendment. The Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. Const. Amend. I. The United States Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is reasonably related to furtherance of a legitimate governmental or penal interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safely, 482 U.S. 78, 89–91 (1987).

The court first conducts the substantial burden analysis. In conducting a "substantial burden" analysis, a court should not judge the significance of a particular belief or practice to the religion at issue. Cutter, 544 U.S. at 725 n. 13; Lovelace, 472 F.3d at 187 n. 2. Rather, a plaintiff must demonstrate that a governmental entity substantially pressured him to modify his behavior and to

8

violate his religious beliefs in order to demonstrate that his religious practice has been substantially burdened. See Lovelace, 472 F.3d at 187. A plaintiff, however, is not required, as part of this prima facie showing, to prove that the exercise at issue is required by or essential to his religion. See Cutter, 544 U.S. at 725 n. 13.

In Holt v. Hobbs, 135 S. Ct. 853, 866 (2015), the United States Supreme Court examined whether a plaintiff who held the belief that growing a beard was a dictate of his religious faith was substantially burdened by the correctional facility's policy which required him to shave his beard. Id. at 862. The sincerity of the plaintiff's religious belief in Holt was not disputed. Id. Under such circumstances, the Court in Holt determined that the plaintiff "easily satisfied" his obligation of demonstrating a substantial burden because the challenged policy required the plaintiff to shave his beard, and thus "engage in conduct that seriously violates [his] religious beliefs," or to disobey that policy and "face serious disciplinary action." Id. The Court reasoned that "[b]ecause the grooming policy put [plaintiff] to this choice, it substantially burdens his religious exercise." Id.

The instant action is distinguishable from Holt because plaintiff in this case was not forced to choose between following the DPS policy regarding the administration of snack bags or to engage in conduct which violated his religious beliefs. Rather, according to plaintiff's own allegations, he freely participated in the 2014 Ramadan fast and "ma[d]e do" by eating regular portions of the bland diet that he was prescribed by medical staff as treatment for his GERD. (Compl.¶ VI; Thompson Aff. Ex. E). Based upon the foregoing, plaintiff failed to establish the DPS policy at issue substantially burdened his practice of Islam. See Krieger v. Brown, 496 F. App'x 322, 326 (4th Cir. 2012) ("Because Krieger did not show that the deprivation of an outdoor worship circle and the requested sacred items modified his behavior and violated his religious beliefs, the district court

9

correctly determined that Krieger failed to establish a prima facie case under RLUIPA."); see also, Evans v. Snyder, No. 2:11-cv-492, 2014 WL 1369301, at *4 (W.D. Mich. Mar. 31, 2014) ("Plaintiff knew that he would not receive the snack bag before he voluntarily participated in the fast. Plaintiff in fact participated in the fast, so he cannot argue that his religious rights were violated. At best, plaintiff was inconvenienced in not receiving snack bags."). Accordingly, plaintiff is unable to establish First Amendment violation, and defendants are entitled to qualified immunity for this claim.

3. Equal Protection

To the extent plaintiff raises an equal protection claim, the Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. To that end, the Equal Protection Clause provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To establish an Equal Protection claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. If he makes this showing, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Veney v. Wyche, 293 F.3d 726, 730–31 (4th Cir. 2002) (internal quotation omitted); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In a prison context, this level of scrutiny is "whether the disparate treatment is reasonably related to [any] legitimate penological interests." Veney, 293 F.3d at 732 (internal quotation omitted).

Plaintiff has not stated that he was treated differently from any person with whom he is similarly situated. Plaintiff, additionally, has presented no evidence to suggest that any alleged

differing treatment among inmates receiving a regular diet and those receiving a special diet was the result of purposeful discrimination. Although pro se litigants are held to less stringent pleading standards than attorneys, the court is not required to "accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir.1987). There is a minimum level of factual support required. White v. White, 886 F.2d 721, 723 (4th Cir. 1989). Based upon the foregoing, plaintiff failed to establish a *prima facie* equal protection claim.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE 20) is GRANTED. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 31st day of January, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge